UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
:
RHONDA WOITOVICH, :
:
                          Plaintiff, :
:     22-CV-1742 (JMF)
        -v- :
:     OPINION AND ORDER
LYDIA SCHOENFELD, :
:
                         Defendant. :
:
---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Rhonda Woitovich brings this action against her maternal aunt, Lydia Schoenfeld, for allegedly refusing to give Woitovich assets left to her in trust by her grandmother, Schoenfeld's mother. Schoenfeld now moves, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Woitovich's claims. The principal issue raised by the motion is whether and to what extent the probate exception to federal jurisdiction applies. For the reasons that follow, the Court concludes that the probate exception bars the Court from considering most — but not all — of Woitovich's claims. Accordingly, Schoenfeld's motion to dismiss is granted in part and denied in part.

## BACKGROUND

      The following facts, taken from the operative Complaint, *see* ECF No. 34 ("FAC"), documents it incorporates by reference, and matters of which the Court may take judicial notice (including filings in the underlying state probate court), are construed in the light most favorable to Woitovich. *See, e.g.*, *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018); *Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013).

On September 18, 2015, Ruth Schoenfeld ("Ruth") died testate. FAC ¶ 13. She was survived by her husband, Seymour Schoenfeld ("Seymour"); two daughters, Lydia and Marlene Schoenfeld ("Marlene"); and a granddaughter (Marlene's daughter), Rhonda Woitovich. *Id.* ¶¶ 9-10, 13; ECF No. 40 ("Pl.'s Opp'n"), at 2. In her last will and testament, *see* ECF No. 40-2 ("Will"), Ruth established a credit shelter trust for Seymour's lifetime benefit (the "Trust"). FAC ¶ 13; *see* Will 6-17. Ruth's will was probated in Nassau County Surrogate's Court (the "Surrogate's Court"). FAC ¶ 14; *see also* ECF No. 37-3 (the petition for probate). The Surrogate's Court duly issued letters testamentary to Seymour and to Schoenfeld, *see* ECF No. 37-4, and letters of trusteeship, as to the Trust, to Schoenfeld and to Woitovich, ECF No. 40-4.

After Seymour's death in 2020, FAC ¶ 9, a conflict arose between Woitovich and Schoenfeld over the Trust. Woitovich maintains that Ruth's will designates her as the sole residual beneficiary of the Trust and, thus, that the Trust must be distributed to her. FAC ¶¶ 11, 17-19. Schoenfeld disputes this construction of the will, *see* ECF No. 38 ("Def.'s Mem."), at 4, and, as co-trustee, has refused to distribute the Trust to Woitovich, FAC ¶ 24. Woitovich now seeks a declaratory judgment that she is entitled to a distribution of the Trust. *Id.* ¶¶ 36-45. She also seeks specific performance, an accounting, and personal damages from Schoenfeld for mismanaging the trust and breaching her contractual and fiduciary duties. *Id.* ¶¶ 28-35, 46-96.[1]

## APPLICABLE LEGAL STANDARDS

Schoenfeld moves to dismiss Woitovich's operative Complaint pursuant to Rules 12(b)(1) and 12(b)(6). A Rule 12(b)(1) motion challenges the court's subject-matter jurisdiction to hear the case. "A case is properly dismissed for lack of subject matter jurisdiction under Rule

---

[1] Woitovich also asks the Court to continually monitor Schoenfeld's management of the Trust. FAC ¶¶ 97-98.

2

12(b)(1) when the district court lacks the [] power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks and citation omitted), *aff'd*, 561 U.S. 247 (2010). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

By contrast, a Rule 12(b)(6) motion tests the legal sufficiency of a complaint and requires a court to determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). When ruling on a Rule 12(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive such a motion, however, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

As noted, Schoenfeld's primary argument is that Woitovich's claims are barred by the probate exception to federal jurisdiction. The probate exception is a judicially created doctrine that proscribes federal courts from hearing "probate matters," even if subject-matter jurisdiction

3

would otherwise lie. *See Marshall v. Marshall*, 547 U.S. 293, 299 (2006). It "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate[, and] also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Id.* at 311-12. The exception is "limited" in scope, as a federal court "should decline subject-matter jurisdiction [under the exception] *only* if a plaintiff seeks to achieve either of the[] [above two] ends." *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 106 (2d Cir. 2007) (emphasis added).

The Second Circuit has articulated a two-part inquiry into whether the probate exception applies. First, does the plaintiff ask that "the federal court administer a probate matter"? *Id.* Second, if not, would the federal court nevertheless still be "exercis[ing] control over a *res* in the custody of a state court" if it ruled on the plaintiff's claim? *Id.*; *see also, e.g.*, *Marcus v. Quattrocchi*, 715 F. Supp. 2d 524, 532 (S.D.N.Y 2010); *Planz v. Planz-Saladino*, No. 20-CV-161, 2021 WL 6693895, at *3 (D. Conn. June 24, 2021). Significantly, the probate exception "[cannot] be used to dismiss widely recognized torts such as breach of fiduciary duty or fraudulent misrepresentation" that do not interfere with a state court's possession of the property at issue. *Lefkowitz*, 528 F.3d at 107 (cleaned up). That is, if a plaintiff brings *in personam* claims against a defendant and "jurisdiction otherwise lies, then the federal court may, indeed must, exercise it." *Id.* at 106.

**A. General Applicability of the Probate Exception**

Before turning to a claim-by-claim assessment of the probate exception, the Court must address two threshold arguments made by Woitovich: first, that the probate exception does not apply at all to claims involving a trust, *see* Pl.'s Opp'n 4; and second, that the probate exception is available only when a state probate court, as opposed to a state court of general jurisdiction,

would have exclusive jurisdiction to hear a claim, *see id.* at 8 n.3, 10-15.  These arguments find some support in a handful of outdated cases, but they are without merit.

Woitovich's first argument — that the probate exception does not apply to trusts — is easily rejected.  Although there are a handful of older district court cases that support the proposition, *see, e.g.*, *Barnes v. Brandrup*, 506 F. Supp. 396, 399 (S.D.N.Y. 1981); *Weingarten v. Warren*, 753 F. Supp. 491, 494 (S.D.N.Y. 1990); *Schonland v. Schonland*, No. 97-CV-558, 1997 WL 695517, at *2 (D. Conn. Oct. 23, 1997), they are outliers and no longer good law.  *See, e.g.*, *Bollenbach v. Haynes*, No. 18-CV-997 (WHP), 2019 WL 1099704, at *5 (S.D.N.Y. Mar. 8, 2019); *Marcus*, 715 F. Supp. 2d at 531 n.4.  Indeed, both the Supreme Court and the Second Circuit have applied the probate exception to trusts.  *Marshall* itself — the Supreme Court's leading modern case on the probate exception — involved a trust.  *See* 547 U.S. at 300.  And the Second Circuit has likewise applied the probate exception to claims involving trusts.  *See, e.g.*, *Mercer v. Bank of N.Y. Mellon, N.A.*, 609 F. App'x 677 (2d Cir. 2015) (summary order); *Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy*, 406 F. App'x 507 (2d Cir. 2010) (summary order).  Woitovich's contention that the probate exception does not apply to trusts is thus squarely foreclosed by these binding precedents.

Woitovich's second threshold argument — that the probate exception "is only available when under state law the dispute would be cognizable only by a probate court," Pl.'s Opp'n 8 n.3 (internal quotation marks omitted) — is similarly without merit.  It relies on *Lamberg v. Callahan*, 455 F.2d 1213 (2d Cir. 1972), in which the Second Circuit held that "[t]he standard for determining whether federal jurisdiction may be exercised [notwithstanding the probate exception] is whether under state law the dispute would be cognizable only by the [state] probate court." *Id.* at 1216.  But "*Lamberg*'s explanation of the probate exception came decades before

5

the Supreme Court's clarification in *Marshall*, and the Second Circuit has not relied on this formulation since *Marshall* was decided in 2006." *Mandell v. Dolloff*, No. 17-CV-1282, 2018 WL 3677895, at *2 n.2 (D. Conn. Aug. 2, 2018). Moreover, even before *Marshall*, the Second Circuit had limited the *Lamberg* formulation to only one prong of the analysis and made clear that it was not dispositive. *See Moser v. Pollin*, 294 F.3d 335, 341 (2d Cir. 2002); *see also, e.g.*, *Mercer v. Mercer*, No. 13-CV-5686 (SJF), 2014 WL 3654667, at *9 (E.D.N.Y. May 22, 2014), *adopted sub nom. Mercer v. Bank of N.Y. Mellon, N.A.*, 2014 WL 3655657 (E.D.N.Y. July 21, 2014), *aff'd*, 609 F. App'x 677 (2d Cir. 2015) (summary order); *Witzenburg v. Jurgens*, No. 05-CV-4827 (SJF), 2007 WL 9710763, at * 5 n.2 (E.D.N.Y. Mar. 1, 2007); *Mandell*, 2018 WL 3677895 at *2 n.2.[2] Thus, the fact that the New York Supreme Court — the State's court of general jurisdiction — may share jurisdiction with the State's probate courts does not render the probate exception inapplicable.

## B. Distribution and Accounting Claims

The Court turns then to whether the probate exception applies to Woitovich's claims. The Court concludes that it does apply to — and thus bars — six of Woitovich's claims, which seek either distributions from the Trust or an accounting of the Trust's assets: Count I, which

---

[2] Before *Marshall*, the Second Circuit applied a two-party inquiry to whether the probate exception applied: "First, is the federal district court . . . being asked to directly probate a will or administer an estate? . . . [Second, would] entertaining the action cause the federal district court to 'interfere with the probate proceedings *or* assume general jurisdiction of the probate *or* control of property in the custody of the state court?'" *Moser*, 294 F.3d at 340 (emphases added) (quoting *Markham v. Allen*, 326 U.S. 490, 492 (1946) and citing *Ashton v. Josephine Bay Paul & C. Michael Paul Found., Inc.*, 918 F.2d 1065, 1071-72 (2d Cir. 1990)). In *Moser*, the Second Circuit made clear that *Lamberg*'s formulation applied only to the "assum[ing] general jurisdiction of the probate" prong. 294 F.3d at 341. In any event, *Marshall* took a different approach altogether. *See Lefkowitz*, 528 F.3d at 105-06 ("In deciding *Marshall*, the Supreme Court acknowledged that the oft-quoted language relied on in *Moser* from the 1946 *Markham* decision . . . is not a model of clarity . . . [and] reigned in [its] boundaries . . . .").

seeks specific performance from Schoenfeld, namely distribution of the Trust to Woitovich, FAC ¶¶ 28-35; Count II, which seeks a declaratory judgment that Woitovich is entitled to the entirety of the Trust, *id.* ¶¶ 36-45; Count VI, which seeks an accounting of the Trust's assets, *id.* ¶¶ 73-78; Count VII, which seeks a construction of the Trust and its dissolution, with the Trust's assets going to Woitovich, *id.* ¶¶ 79-83; Count IX, which (like Count I) seeks to compel distribution of the Trust to Woitovich, *id.* ¶¶ 92-96; and Count X, which requests that the Court continually monitor Schoenfeld's management of the Trust, *id.* ¶¶ 97-98.

Taking the claims in reverse order, Count X fails at the first step of the probate-exception inquiry. As noted above, the first step asks whether the plaintiff seeks to have "the federal court administer a probate matter." *Lefkowitz*, 528 F.3d at 106. This step of the inquiry is "rarely, if ever, violated," *Fisch v. Fisch*, No. 14-CV-1516 (NSR), 2014 WL 5088110, at *2 (S.D.N.Y. Sept. 23, 2014), but Count X is one of those rare violations. At bottom, Count X asks the Court to monitor management of the Trust and to instruct Woitovich "on the correct course of action" if "Schoenfeld continues to callously mismanage" it. FAC ¶ 108. Putting aside whether this is even a valid claim, *see* ECF No. 41 ("Def.'s Reply"), at 3 n.2 ("Research has disclosed no case law authority recognizing this as a legitimate claim for relief."), it plainly seeks for the Court to step into the shoes of the probate court and administer the Trust. That relief is "purely probate in nature" and thus plainly falls within the probate exception. *Lefkowitz*, 528 F.3d at 105.

Woitovich's other distribution and accounting claims fail at the second step of the probate-exception inquiry, which asks whether the federal court would nevertheless be "exercis[ing] control over a *res* in the custody of a state court" if it ruled on the plaintiff's claim. *Lefkowitz*, 528 F.3d at 106. Indeed, all five claims pertain to "the distribution of funds from a trust created by the will and still under the control of the Surrogate" and, thus, "would require

7

[the Court] to both directly interfere in the administration of the estate and exercise jurisdiction over property in the custody of the state court." *Mercer*, 2014 WL 3654667, at *8; *see Kennedy*, 406 F. App'x at 509-10 (holding that claims like the distribution claims here were barred by the probate exception because they asked the district court "'to dispose of property that is in the custody of a state probate court,' in this case, the court administering the testamentary trust" (quoting *Marshall*, 547 U.S. at 293)); *In re Disp. Over Distrib. of Assets of Est. of Ash*, No. 15-CV-8644 (JPO), 2018 WL 2269241, at *4 (S.D.N.Y. May 17, 2018) (dismissing accounting claims like those here pursuant to the probate exception); *Groman v. Cola*, No. 07-CV-2635 (RPP), 2007 WL 3340922, at *6 (S.D.N.Y. Nov. 7, 2007) (similar).

Woitovich argues otherwise on the ground that the Trust is no longer in the Surrogate's Court's "custody." *See* Pl.'s Opp'n 9, 17-18. "The only action that the . . . Surrogate's Court has taken regarding the [Trust]," she asserts, "was to appoint the trustees," and there are no proceedings relating to the Trust currently pending. Pl.'s Opp'n 9. True, but that does not change the fact that the Trust remains under the Surrogate's Court's jurisdiction. *See, e.g.*, *Byers v. McAuley*, 149 U.S. 608, 615 (1893) ("An administrator appointed by a state court is an officer of that court. His possession of the decedent's property is a possession taken in obedience to the orders of that court. It is the possession of the court, and it is a possession which cannot be disturbed by any other court."); *accord Groman*, 2007 WL 3340922, at *6. Indeed, "New York law gives Surrogate's Courts extensive powers over testamentary trusts," *Mercer*, 609 F. App'x at 679, even *after* termination of the trust through final distribution, *see, e.g.*, *In re Hug's Est.*, 107 N.Y.S.2d 664, 666 (N.Y. Sur. Ct. 1949) ("This court has jurisdiction of all further proceedings in this estate. The fact that the executor has distributed the assets does not deprive the court of jurisdiction. This court has the power to compel the executor to account, the power

8

to direct a proper distribution of the estate and, as an incident thereto, the power to order the refund of any property heretofore distributed erroneously." (citations omitted)); *accord In re Est. of Rockefeller*, 2004 NYLJ LEXIS 4753, at *3-4 (N.Y. Sur. Ct. Jan. 5, 2004); *Collins v. Mfrs. Hanover Trust Co.*, 478 N.Y.S.2d 236, 238 (N.Y. Sup. Ct. 1984). Thus, the fact that the Surrogate's Court has not done more than appoint the trustees of the Trust, *see* Pl.'s Opp'n 9, has little or no bearing on whether it *can* do more.

In short, the Court finds that the Trust is in the custody of the Surrogate's Court and that the probate exception bars all of Woitovich's distribution and accounting claims.[3]

## C. Damages Claims

Woitovich's other four claims, which seek damages from Schoenfeld, require closer analysis. Following *Marshall*, *in personam* claims generally fall outside the probate exception. *See Lefkowitz*, 528 F.3d at 106. That said, a court still has a duty to "examine the substance of the relief that [a plaintiff is] seeking" and not just rely on "the labels they have used." *Mercer*, 609 F. App'x at 679. Upon such examination, the Court concludes that two of Woitovich's damages claims are barred by the probate exception and two are not.

First, Counts IV and VIII — which seek damages for breach of contract and for refusal to distribute the Trust to Woitovich, respectively, *see* FAC ¶¶ 55-63, 84-91 — are barred by the probate exception. Although styled as *in personam* claims, these claims are actually *res* claims

---

[3] In light of that conclusion, the Court need not — and, in fact, may not — reach Schoenfeld's alternative argument that Woitovich's request for an accounting fails as a matter of New York law. *See* Def.'s Mem. 12-13; *see also, e.g.*, *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998). For similar reasons, the Court does not address the parties' dispute over whether the "*Princess Lida* doctrine" — a concept that is similar to, but distinct from, the probate exception — applies to Woitovich's claims. *Compare* Pl.'s Opp'n 4-5, *with* Def.'s Reply 7-8. Although Woitovich asserts otherwise, *see* Pl.'s Opp'n 5-8, the *Princess Lida* doctrine is "a rule of comity or abstention, rather than one of subject matter jurisdiction." *Carvel v. Thomas & Agnes Carvel Found.*, 188 F.3d 83, 86 (2d Cir. 1999).

9

in disguise. At bottom, each is premised on the notion that Schoenfeld was required to distribute the Trust to Woitovich and that Schoenfeld's failure to do so constituted breach of the Trust agreement or mismanagement of the Trust's assets. *See* FAC ¶¶ 60, 85-87. To grant relief with respect to these claims, therefore, the Court would have to conclude that Woitovich is entitled to distribution of the assets in the Trust. And in doing so, the Court would be "assert[ing] control" over the Trust, contrary to the probate exception. *See, e.g.*, *McKie v. Est. of Dickinson*, No. 20-CV-2973 (KAM), 2021 WL 3292516, at *6, 9 (E.D.N.Y. Aug. 2, 2021) ("[The p]laintiff's fiduciary duty claims seeking damages are based on [the] plaintiff's theory that [the] defendants, in substance, mishandled estate assets by not distributing the assets to [the] plaintiff and [thus,] the claims are accordingly barred by the probate exception."), *aff'd in relevant part sub nom. McKie v. Kornegay*, No. 21-1943, 2022 WL 4241355 (2d Cir. Sept. 15, 2022) (summary order); *Sechler-Hoar v. Tr. U/W of Gladys G. Hoart*, No. 17-CV-1968, 2020 WL 292314, at *4 (D. Conn. Jan. 21, 2020) ("An *in personam* claim might be subject to the probate exception if to provide the relief sought the federal court would have to assert control over property that remains under the control of the state courts." (internal quotation marks omitted)).

By contrast, the Court concludes that Counts III and V — which seek damages for breach of fiduciary duty and mismanagement of the Trust, respectively, *see* FAC ¶¶ 46-54, 64-72 — are not barred by the probate exception. Each seeks personal damages from Schoenfeld for allegedly devaluing the Trust through poor investment decisions. *See id.* ¶¶ 49, 66. As such, they are quintessential *in personam* claims not barred by the probate exception. With these Counts, Woitovich does not seek to disturb the Trust; instead, she merely seeks personal damages directly from Schoenfeld. *See, e.g.*, *Kennedy*, 406 F. App'x at 509 ("[The Second Circuit has] found that the [probate] exception . . . [does not apply] to claims of breach of

fiduciary duty in which the [plaintiff] sought damages from the [d]efendants personally rather than assets or distributions from an estate." (cleaned up)); *see also, e.g.*, *McKie*, 2022 WL 4241355, at *2 ("The [probate] exception does not apply to actions that seek damages from [d]efendants personally rather than assets or distributions from the estate, even if they are intertwined with a probate action." (cleaned up)).

In short, two claims — Counts III and V — survive the probate exception.[4]

## CONCLUSION

For the foregoing reasons, Schoenfeld's motion to dismiss is granted in part and denied in part. Specifically, the Court dismisses all but Counts III and V of the operative Complaint. Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). In this case, leave to

---

[4] In her reply brief, Schoenfeld argued for the first time that Woitovich's damages claims should be dismissed for another reason: that, under New York law, co-trustees of a trust cannot seek damages from one another. Def.'s Reply 9-10. Although arguments raised for the first time in a reply brief are often deemed forfeited, *see United States v. Fernandez*, No. 17-CR-167 (JMF), 2017 WL 6372783, at *1 n.2 (S.D.N.Y. Dec. 12, 2017), the Court invited a sur-reply on this argument because it was potentially dispositive, *see* ECF Nos. 43, 44 ("Pl.'s Sur-Reply"). Upon review of Woitovich's sur-reply, the Court concludes that Counts III and V cannot be dismissed on this ground. It is true that, under New York law, co-fiduciaries are "regarded . . . as one entity" and generally "cannot prevail in a cause of action against [one another] for breach of the same obligation." *Zimmerman v. Pokart*, 662 N.Y.S.2d 5, 7 (N.Y. App. Div. 1997). But this "cofiduciary liability rule" is not as absolute as Schoenfeld asserts it is. Instead, it requires a fact-based inquiry and has exceptions "where there is no evidence that the passive cofiduciaries knew of or participated in another cofiduciary's misfeasance or culpable misconduct." *In re Knox*, 946 N.Y.S.2d 817, 819 (N.Y. App. Div. 2012); *see also, e.g.*, *In re Est. of Witherill*, 828 N.Y.S.2d 722, 726 (N.Y. Sup. Ct. 2007) (affirming the underlying Surrogate's Court decision that the cofiduciary liability rule was inapplicable). Considering only the allegations in the operative Complaint, and drawing all inferences in Woitovich's favor, the Court cannot dismiss Counts III and V on that basis. Accordingly, the argument is denied without prejudice to renewal once the record is more fully developed. *See also* Pl.'s Sur-Reply 3-5.

amend is unwarranted because the problem with Woitovich's claims is jurisdictional and, thus, amendment would be futile. *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Moreover, Woitovich neither requests leave to amend nor argues that she possesses any additional facts that could cure the defects in her claims. *See, e.g.*, *Worley v. Simon Meyrowitz & Meyrowitz, P.C.*, No. 21-CV-8385 (JMF), 2022 WL 14760633, at *5 (S.D.N.Y. Oct. 25, 2022) (declining to grant leave to amend in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading). Dismissal pursuant to Rule 12(b)(1), however, is without prejudice. *See, e.g.*, *Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 121 (2d Cir. 2017). Accordingly, Woitovich is free to refile her dismissed claims in state court.[5]

Schoenfeld shall answer the operative Complaint **within fourteen days** of the date of this Opinion and Order. *See* Fed. R. Civ. P. 12(a)(4)(A). By separate Order, the Court will reschedule the initial pretrial conference, which was previously adjourned *sine die*, *see* ECF No. 22. The Clerk of Court is directed to terminate ECF No. 36.

SO ORDERED.

Dated: December 28, 2022
New York, New York

JESSE M. FURMAN
United States District Judge

---

[5] Needless to say, Woitovich could voluntarily (or, if need be, with leave of Court) dismiss Counts III and V and refile them with the dismissed claims in state court — thereby avoiding piecemeal litigation. The parties should confer and, if appropriate, be prepared to discuss that approach with the Court at the initial pretrial conference.